H9FKARNP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                            17 CR 570 (ALC)

5   MICHAEL ARNSTEIN,

6                Defendant.

7   ------------------------------x

8                                       New York, N.Y.
                                        September 15, 2017
9                                       11:35 p.m.

10
    Before:
11
                      HON. ANDREW L. CARTER, JR.,
12
                                        District Judge
13

14                        APPEARANCES

15
    JOON H. KIM,
16       Acting United States Attorney for the
         Southern District of New York
17  SEBASTIAN SWETT
         Assistant United States Attorney
18
    STEVEN L. BROUNSTEIN
19       Attorney for Defendant

20  ALSO PRESENT:

21  RICHARD SMYTHE, FBI
    MAXIME VALEZ, U.S. MARSHALS SERVICE
22

23

24

25

H9FKARNP

1              THE DEPUTY CLERK:  Criminal cause for an arraignment

2      and change-of-plea hearing in United States versus Michael

3      Arnstein.

4              Counsel, please state your appearance.

5              For the government?

6              MR. SWETT:  Good morning, your Honor.  Sheb Swett, for

7      the United States.  I'm joined at counsel table by Special

8      Agent Richard Smythe, of the FBI, and Deputy Marshal Maxime

9      Valez, from the United States Marshals Service.

10             THE DEPUTY CLERK:  And for the defendant?

11             MR. BROUNSTEIN:  Steven Brounstein, for Mr. Arnstein.

12     Good morning, sir.

13             THE COURT:  Good morning.

14             Has Mr. Arnstein been presented on the complaint

15     previously?

16             MR. SWETT:  Mr. Arnstein was presented on the

17     complaint.  I believe it was in March, your Honor.

18             THE COURT:  And has he been arraigned on the

19     information, or has he waived indictment yet?

20             MR. SWETT:  We have a signed waiver of indictment.  He

21     has not been arraigned on the information yet.

22             THE COURT:  Okay.  You say you have a signed waiver of

23     indictment.  You're talking about the form?  Has he actually --

24             MR. SWETT:  He has not waived in open court.

25             THE COURT:  Okay.

H9FKARNP

1          Mr. Arnstein, I'm going to ask you some questions.

2     I'm going to require that your answers be under oath, so I will

3     ask my wonderful and talented deputy to administer the oath.

4          (Defendant sworn)

5          THE COURT:  What is your full name?

6          THE DEFENDANT:  Michael Andrew Arnstein.

7          THE COURT:  How old are you?

8          THE DEFENDANT:  Forty years old.

9          THE COURT:  How far did you go in school?

10          THE DEFENDANT:  Partial -- some college.

11          THE COURT:  Are you currently, or have you recently

12     been, under the care of a physician or a psychiatrist?

13          THE DEFENDANT:  No.

14          THE COURT:  In the last 24 hours, have you taken any

15     drugs, medicine, or pills, or had any alcoholic beverages?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  Have you been furnished with a copy of the

18     charge against you?  Have you seen a copy of the information?

19          THE DEFENDANT:  Yes, I have.

20          THE COURT:  The information has one count.  It charges

21     you with a conspiracy to forge a judge's signature.  It reads

22     as follows:  "The United States Attorney charges:

23          "From at least in or about February 2014 up to and

24     including in or about February 2017, in the Southern District

25     of New York and elsewhere, Michael Arnstein, the defendant, and

H9FKARNP

others known and unknown, willfully and knowingly did combine,

conspire, confederate, and agree together with each other to

forge a judge's signature, in violation of Title 18, United

States Code, Section 505.

"It was a part and an object of the conspiracy that

Michael Arnstein, the defendant, and others known and unknown,

willfully and knowingly would and did forge the signature of a

judge, register, and other officer of any court of the United

States, and forge and counterfeited the seal of any such court,

and knowingly concurred in using any such forged or counterfeit

signature and seal for the purpose of authenticating any

proceeding and document, and tendered in evidence any such

proceeding and document with a false counterfeit signature of

any such judge, register, and other officer, and a false and

counterfeit seal of the court subscribed and attached thereto,

knowing such signature and seal to be false and counterfeit, in

violation of Title 18, United States Code, Section 505."

Overt acts that are charged are:

"In furtherance of the conspiracy and to effect the

illegal object thereof, the following overt acts were committed

in the Southern District of New York and elsewhere:

"(a)  On or about October 3rd, 2014, Michael Arnstein,

the defendant, emailed an individual in the Southern District

of New York and instructed that individual to create a

counterfeit judicial order by digitally altering a genuine

H9FKARNP

1    judicial order;

2            "(b)  On or about October 22nd, 2014, Michael

3    Arnstein, the defendant, emailed a copy of a counterfeit

4    judicial order to Google, Inc., and requested that Google

5    de-index Uniform Resource Locators contained in the counterfeit

6    order.  Title 18, United States Code, Section 371."

7            Do you understand the nature of the charge contained

8    in the information, Mr. Arnstein?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  Have you discussed it with your attorney?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  Counsel, do you feel that your client

13   understands the charge against him?

14           MR. BROUNSTEIN:  Yes, sir.

15           THE COURT:  Mr. Arnstein, that charge contained in the

16   information is a felony.  As a result, you have a

17   constitutional right to be charged by an indictment of the

18   grand jury, but you can waive that right and consent to being

19   charged by information of the U.S. Attorney.

20           Do you understand that?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  Instead of an indictment, this felony

23   charge against you has been brought by the U.S. Attorney by the

24   filing of an information.  Unless you waive indictment, you may

25   not be charged with a felony unless a grand jury finds by

H9FKARNP

1    return of an indictment that there is probable cause to believe

2    that a crime has been committed and that you committed it.  If

3    you do not waive indictment, the government may present the

4    case to the grand jury and ask it to indict you.

5              Do you understand?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  The grand jury is composed of at least 16

8    and not more than 23 persons, and at least 12 grand jurors must

9    find that there is probable cause to believe that you committed

10   the crime with which you are charged before you may be

11   indicted.  The grand jury might or might not indict you.  If

12   you waive indictment by the grand jury, the case will proceed

13   against you on the U.S. Attorney's information just as though

14   you had been indicted.

15             Do you understand that?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Have you discussed waiving your right to

18   indictment by the grand jury with your attorney?

19             THE DEFENDANT:  Yes, I have, sir.

20             THE COURT:  Do you understand your right to indictment

21   by a grand jury?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Have any threats or promises been made to

24   induce you to waive indictment?

25             THE DEFENDANT:  No.

H9FKARNP

1          THE COURT:  Do you wish to waive your right to

2    indictment by a grand jury?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Defense counsel, is there any reason why

5    your client should not waive indictment?

6          MR. BROUNSTEIN:  No, your Honor.  I've discussed this

7    thoroughly with him.

8          THE COURT:  I believe there is a signed waiver of

9    indictment that I have before me.  Mr. Arnstein, is that your

10   signature on that document?

11         THE DEFENDANT:  Yes, it is.

12         THE COURT:  Before signing it, did you read it?

13         THE DEFENDANT:  Yes, I have.

14         THE COURT:  Did you discuss it with your attorney?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Did you sign that document because you

17   wished to waive your right to indictment?

18         THE DEFENDANT:  Yes, I did.

19         THE COURT:  I find that the waiver is knowingly and

20   voluntarily made, and I accept it.  We will proceed to

21   arraignment on the information.

22         Mr. Arnstein, again, you've indicated that you

23   understand the nature of the charge against you in the

24   information, correct?

25         THE DEFENDANT:  Yes, I have.

H9FKARNP

1          THE COURT:  The Court will enter a plea of not guilty

2     on your behalf to the charge in the information.

3          Now, my understanding is that, Mr. Arnstein, you wish

4     to withdraw that plea of not guilty and enter a plea of guilty

5     to the sole count of the information pursuant to an agreement

6     with the government.  Is that correct?

7          THE DEFENDANT:  That's accurate, your Honor.

8          THE COURT:  Mr. Arnstein, you have a constitutional

9     right to continue to plead not guilty.  If you persist in that

10    plea of not guilty, you have the right to a speedy and public

11    trial by a jury.  Do you understand?

12         THE DEFENDANT:  Yes, I do.

13         THE COURT:  At that trial, and at every stage of this

14    criminal litigation, you have the right to be represented by an

15    attorney.  Do you understand?

16         THE DEFENDANT:  Yes.

17         THE COURT:  If you cannot afford to hire your own

18    attorney, the Court will give you an attorney for free.  Do you

19    understand?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Counsel, are you retained or appointed on

22    this matter?

23         MR. BROUNSTEIN:  I'm retained, your Honor.

24         THE COURT:  At trial, you would be presumed innocent.

25    You would not have to prove that you're innocent.  The burden

H9FKARNP

 1    of proof would be on the government at all times, and they

 2    would have to prove each and every element of the crime charged

 3    beyond a reasonable doubt in order for you to be convicted of

 4    that crime.

 5              Do you understand?

 6              THE DEFENDANT:  Yes, I do.

 7              THE COURT:  So let's talk about those elements as it

 8    relates to the sole count of the information.

 9              For the government to prove you guilty of the crime

10    charged in Count One, conspiracy to forge a judge's signature,

11    the government would have to prove the following beyond a

12    reasonable doubt:  That from about February 2014 up to and

13    including February 2017, that you willfully and knowingly

14    conspired with others to commit a crime.

15              Do you understand?

16              THE DEFENDANT:  Yes, sir.

17              THE COURT:  A conspiracy requires that you agree with

18    at least one other person to commit a criminal act.  Do you

19    understand?

20              THE DEFENDANT:  Yes.

21              THE COURT:  The government would have to prove that

22    you entered into that agreement knowingly and willfully.  Do

23    you understand?

24              THE DEFENDANT:  Yes.

25              THE COURT:  And knowingly and willfully understanding

H9FKARNP

1    the purpose of that agreement.  Do you understand?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  And the government would have to prove

4    that the purpose or object of that agreement or conspiracy was

5    to forge a judge's signature in violation of Title 18, United

6    States Code, Section 505.  Do you understand?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And the government would be required to

9    prove that you knowingly and willfully agreed with others that

10   you would or someone in that conspiracy would forge the

11   signature of a judge.  Do you understand?

12             THE DEFENDANT:  Yes.

13             THE COURT:  And that that was a judge of the United

14   States.  Do you understand?

15             THE DEFENDANT:  Yes.

16             THE COURT:  And that you -- or that the people in the

17   conspiracy forged the signature of that judge for the purpose

18   of authenticating a document.  Do you understand?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  And that at the time that you or someone

21   in the conspiracy forged the signature of a federal judge, of a

22   United States judge, to authenticate a document, that you knew

23   that the signature was false and counterfeit.  Do you

24   understand?

25             THE DEFENDANT:  Correct.  Yes.

H9FKARNP

1          THE COURT:  In addition, if you plead guilty, you will

2     be waiving your right to challenge the venue of the

3     prosecution.  Venue means that the government needs to bring

4     the case in the judicial district where the crime took place.

5          Do you understand?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Counsel for the government, have I left

8     out any elements of the offense?

9          MR. SWETT:  I would just add that as part of the

10    conspiracy charge, the government would need to prove that a

11    member of the conspiracy took an overt act in furtherance of

12    the conspiracy.

13         THE COURT:  Okay.  Thank you.

14         In addition, Mr. Arnstein, the government would have

15    to prove the commission of at least one overt act.  Do you

16    understand?

17         THE DEFENDANT:  Yes.

18         THE COURT:  The overt acts charged in the information

19    are that:  One, you emailed an individual in the Southern

20    District of New York and instructed that individual to create a

21    counterfeit judicial order by digitally altering a genuine

22    judicial order.  Do you understand?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  The other overt act that the government

25    would need to prove -- they'd have to prove one of these overt

H9FKARNP

1   acts.  The other one that's alleged in the information is that

2   on or about October 22nd, 2014, that you emailed a copy of a

3   counterfeit judicial order to Google and requested that Google

4   de-index Uniform Resource Locators contained in the counterfeit

5   order.

6          Do you understand?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Thank you for that, counsel for the

9   government.  Are there any other elements that I have left out?

10         MR. SWETT:  No, your Honor.

11         THE COURT:  Okay.

12         Counsel for the defense, have I left out any elements?

13         MR. BROUNSTEIN:  No, sir.

14         THE COURT:  So, Mr. Arnstein, the government would

15   have to prove each and every one of those elements beyond a

16   reasonable doubt.  Do you understand?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  In order to attempt to prove those

19   elements beyond a reasonable doubt, the government would call

20   witnesses.  Your lawyer could question witnesses.  Do you

21   understand?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Your lawyer could object to evidence that

24   the government sought to introduce against you.  Do you

25   understand?

H9FKARNP

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  You could call your own witnesses at

3     trial, and your lawyer would have the subpoena power of the

4     United States to make witnesses come to court for you.  Do you

5     understand?

6          THE DEFENDANT:  Yes.

7          THE COURT:  In addition, you could testify on your own

8     behalf at trial, but, at the same time, you could not be forced

9     to testify because you have a right or privilege against

10    self-incrimination.  What the right or privilege against

11    self-incrimination means is that you cannot be required to say

12    anything out of your own mouth that makes you appear guilty.

13          Do you understand?

14          THE DEFENDANT:  Yes, I do.

15          THE COURT:  So, even if you are guilty, you are not

16    required to plead guilty.  You could remain silent and force

17    the government to attempt to prove each and every element of

18    the crime charged beyond a reasonable doubt.  Do you

19    understand?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  If the government failed to prove any

22    element of the crime charged beyond a reasonable doubt, the

23    jury would be duty-bound to find you not guilty.  Do you

24    understand?

25          THE DEFENDANT:  Yes, I do.

H9FKARNP

1          THE COURT:  So, again, even if you are guilty, you are

2   not required to plead guilty.  Do you understand?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  If you plead guilty, I will have to ask

5   what you did that makes you guilty of the crime charged, and

6   when you answer those questions, you'll be saying things out of

7   your own mouth that make you appear guilty, thereby giving up

8   your right or privilege against self-incrimination.

9          Do you understand?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  Let's talk about the sentencing process.

12          If I accept your plea of guilty, you'll meet with the

13   probation department, and they will prepare a presentence or

14   probation report.  That report will have information about you

15   and the crime that you are alleged to have committed.

16          Do you understand?

17          THE DEFENDANT:  Yes.

18          THE COURT:  That report will also have the probation

19   department's sentencing guideline calculation.  Have you and

20   your attorney discussed the sentencing guidelines and how they

21   might apply in your case?

22          THE DEFENDANT:  Yes, we have.

23          THE COURT:  The sentencing guidelines are advisory.

24   What that means is, while I am required to determine the

25   guideline range that applies to your case, once I make that

H9FKARNP

1      determination, I am not required to sentence you with that

2      range.  Do you understand?

3                  THE DEFENDANT:  Yes, I do.

4                  THE COURT:  I will determine the guideline range, and

5      I will determine the ultimate sentence in this case.  So, as

6      you sit here today, there is no promise as to what your

7      guideline range will be, nor is there a promise as to what your

8      sentence will be.  Do you understand?

9                  THE DEFENDANT:  Yes, your Honor, I understand.

10                 THE COURT:  Let's talk about Court Exhibit 1, your

11     agreement with the government.  Your signature appears on the

12     last page, I believe.  Is that, in fact, your signature on the

13     last page of that document?

14                 THE DEFENDANT:  Yes, it is, your Honor.

15                 THE COURT:  Before signing that document, did you read

16     it?

17                 THE DEFENDANT:  Yes, I have.

18                 THE COURT:  Do you understand it?

19                 THE DEFENDANT:  Yes, I do.

20                 THE COURT:  Did you discuss it with your attorney?

21                 THE DEFENDANT:  Yes, we discussed it.

22                 THE COURT:  Does this document, Court Exhibit 1,

23     contain the entirety of your agreement with the government?

24                 THE DEFENDANT:  Yes, it does.

25                 THE COURT:  Counsel for the government and the

H9FKARNP

1  defense, is that correct?

2          MR. SWETT:  That is correct, your Honor.

3          MR. BROUNSTEIN:  Yes, Judge, it encompasses what we

4  agreed upon and also what we disagreed upon as well.

5          THE COURT:  Okay.

6          Let's talk about the statutory penalties that apply.

7  For Count One, there's a maximum sentence of five years'

8  imprisonment.  Do you understand?

9          THE DEFENDANT:  Yes, I do.

10          THE COURT:  There's a maximum term of three years of

11  supervised release.  Do you understand?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Supervised release is like a term of

14  probation you would serve after a term of custody.  You will be

15  subject to drug testing, visits to a probation officer's

16  office, and other limitations on your freedom.  Do you

17  understand?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  If you were to violate a condition of

20  supervised release, you could be sentenced to an additional

21  term of custody and an additional term of supervised release

22  without credit for time previously served in custody or on

23  supervised release.  Do you understand?

24          THE DEFENDANT:  Yes, I understand.

25          THE COURT:  You'd also be subject to the possibility

H9FKARNP

1    of a fine, which would be based on your ability to pay it.  For

2    Count One, the maximum fine is $250,000.  Do you understand?

3                THE DEFENDANT:  Yes, I understand.

4                THE COURT:  In addition, you would be subject to a

5    special assessment of $100, which is like a fine, except it is

6    mandatory, and I must impose the $100 special assessment, and

7    you must pay it.  Do you understand?

8                THE DEFENDANT:  Yes, I do.

9                THE COURT:  Have you seen the government's guideline

10   estimate that's contained in your agreement?

11               THE DEFENDANT:  Yes, your Honor.

12               THE COURT:  I want to reiterate to you that that is

13   simply an estimate.  That is not binding on the probation

14   department, it's not binding on me.  Do you understand?

15               THE DEFENDANT:  Yes, sir.

16               THE COURT:  I will determine the guideline range, and

17   I will determine the sentence.  Do you understand?

18               THE DEFENDANT:  Yes, your Honor.

19               THE COURT:  I want to make sure that you understand

20   that if you are not a United States citizen, your guilty plea

21   and conviction make it very likely that you will be deported

22   from the United States.  Do you understand?

23               THE DEFENDANT:  Yes, your Honor.

24               THE COURT:  Have you discussed that with your

25   attorney?

1              THE DEFENDANT:  Well --

2              MR. BROUNSTEIN:  He's a citizen, your Honor.

3              THE DEFENDANT:  I'm a citizen.

4              THE COURT:  Okay.

5              MR. BROUNSTEIN:  He was born here.

6              THE COURT:  Does the government have any reason to

7    doubt that?

8              MR. SWETT:  No, your Honor.

9              THE COURT:  You have a statutory right to appeal.

10   There are time constraints on your ability to file an appeal,

11   and you need to talk to your lawyer about that following

12   sentence.  If you could not afford to hire a lawyer to help you

13   prosecute the appeal, the Court would give you a lawyer for

14   free.

15             Do you understand?

16             THE DEFENDANT:  Yes, I do.

17             THE COURT:  Although you have a statutory right to

18   appeal, under your agreement, you have agreed not to file a

19   direct appeal, nor bring a collateral challenge, nor seek a

20   sentence modification of any sentence within or below the

21   guideline range of 12 to 18 months' imprisonment.

22             Do you understand?

23             THE DEFENDANT:  Yeah, that's correct.

24             THE COURT:  Do you have any questions for me before we

25   continue?

H9FKARNP

1              THE DEFENDANT:  No, your Honor.

2              THE COURT:  Do you have any questions you'd like to

3      ask your attorney in private before we continue?

4              THE DEFENDANT:  No, sir.

5              THE COURT:  Are you satisfied with your legal

6      representation up to this point?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Defense counsel, are you aware of any

9      reason why your client should not plead guilty?

10             MR. BROUNSTEIN:  No, sir.

11             THE COURT:  Are you aware of any legal defense to the

12     charge?

13             MR. BROUNSTEIN:  No, your Honor.

14             THE COURT:  Mr. Arnstein, are you willing to give up

15     your rights to a trial, the other rights that we have

16     discussed?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  Other than what's contained in Court

19     Exhibit 1, your agreement with the government, has anyone made

20     any promises to induce you to give up those rights?

21             THE DEFENDANT:  No, sir.

22             THE COURT:  Has anyone made any threats to force you

23     to give up those rights?

24             THE DEFENDANT:  No, sir.

25             THE COURT:  How do you plead to Count One of the

H9FKARNP

1   information, guilty or not guilty?

2           THE DEFENDANT:  I plead guilty.

3           THE COURT:  What did you do that makes you guilty?

4           THE DEFENDANT:  Between the approximate dates of

5   February 2014 to February 2017, I, with the assistance of

6   others, agreed to forge a judge's signature on a court order

7   that was purported to emanate from the Southern District of New

8   York.  Prior to doing that, I had obtained a legal court order

9   from the court seeking injunctive relief against an individual

10  who conducted a defamatory campaign against myself and my

11  business.  After receiving that court order, I forged the

12  judge's signature on subsequent orders that I created seeking

13  similar relief.  I knew that what I was doing was wrong, and I

14  accept responsibility for my actions.

15          THE COURT:  What did you do with those orders, once

16  you created those counterfeit orders?

17          THE DEFENDANT:  I submitted them to Google's legal

18  department to request that they remove defamatory links about

19  me and my company off of the Internet.

20          THE COURT:  When you submitted those orders to Google,

21  did you, in fact, know that those orders were counterfeit and

22  that the judge's signature on those orders was forged?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Did you do that pursuant to an agreement

25  that you had with other people to do that?

H9FKARNP

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  Was it your intention that Google believe

3      this document, this order?  Did you want Google to believe that

4      this order was, in fact, authentic?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Was that part of the agreement that you

7      had with others as well?

8              THE DEFENDANT:  Yes, it is.

9              THE COURT:  Which boroughs were you in when you were

10     doing this?

11             THE DEFENDANT:  Manhattan.

12             THE COURT:  Counsel for the government, is there any

13     further allocution requested?

14             MR. SWETT:  No, your Honor.

15             THE COURT:  Counsel for the defense?

16             MR. BROUNSTEIN:  No, Judge.

17             THE COURT:  I find that Mr. Arnstein understands the

18     rights that he's waiving by pleading guilty.  I further find

19     that there is a factual basis for the plea, and I will accept

20     his plea of guilty.  We will schedule a sentencing for Tuesday,

21     January 16th, at 10:00 a.m.

22             Is there anything else from the government or the

23     defense?

24             MR. SWETT:  No, Judge.

25             MR. BROUNSTEIN:  Judge, I do have an application,

H9FKARNP

Judge.  When Mr. Arnstein was originally presented before the

Magistrate's Court, he was released on his own recognizance,

but there were certain travel restrictions placed on him.

Those travel restrictions, he actually -- his residence now is

in Hawaii.  He was originally -- they went to arrest him in

Hawaii, but his business was in New York, and he surrendered to

authorities when he found out that he was being arrested.

He was released on his own recognizance with travel

restrictions.  I have made, Judge -- also, what the government

has allowed him to do is there are certain travel within the

United States, which the magistrate judge allowed, that with

the government's consent, he can travel to those places.

However, he does sometimes require to travel internationally.

We did make two applications before the magistrates to travel

internationally prior, and those applications were denied.

Judge, I am making a specific application now to this Court.

Those two prior applications, Judge, had to do with

his business, and I can certainly document that to you at a

later date.  Mr. Arnstein is a member of the United States --

really Spartathlon ultramarathon team.  He is an ultramarathon

runner who runs hundred-mile distances.  I did receive a letter

that was actually addressed to the Court from the captain of

that team, who is an attorney understanding Mr. Arnstein's

restrictions, asking permission to allow him to represent the

United States at an ultramarathon run in Greece during the last

H9FKARNP

1    week of September into the first week of October.  If the Court

2    would allow him to travel, what I would do is this:  I would

3    provide all the travel information to both the government and

4    to pretrial services.  Upon returning to the United States, I

5    would have him surrender his passport within 48 hours again to

6    pretrial services.  And, Judge, I will detail and document all

7    of his activities and places he's staying during that.  It is a

8    request.  I do have it addressed to the Court.  I'm asking the

9    Court to allow him to do that, so he can represent the United

10   States in this event.

11             THE COURT:  And what exactly is his -- putting aside

12   the ultramarathon running, what is his business that's in

13   Hawaii?

14             MR. BROUNSTEIN:  No, no.  He lives in Hawaii.  His

15   residence is in Hawaii.  His business requires international

16   travel, but he hasn't.  He's in -- which is really part and

17   parcel of this matter, is he sort of manufactures and sells

18   sapphire jewelry throughout the world, and he has a business

19   interest, it's 12 employees who are in Sri Lanka and 12

20   employees in New York, and his family lives in Hawaii, which he

21   travels back and forth occasionally.  There hasn't been any

22   problems with that, Judge.  He's lived up to all his

23   requirements.  He's reported to pretrial services when

24   necessary.  I speak to him probably at least two to three times

25   a week, either by speaking to him or via email.  I would ask

H9FKARNP

1    the Court allow him to go and represent his country in this

2    matter.

3            I do have -- like I said, Judge, I do have a letter

4    addressed to the Court from the captain of that team which

5    explains the travel and what this event is.  He has represented

6    the United States in this event before.

7            THE COURT:  What is it -- if he were allowed to do

8    this, who does this actually benefit?

9            MR. BROUNSTEIN:  Well, Judge, it's a team effort

10   representing the United States of America.  There's no money

11   involved, there's nothing.  It's just a question of national

12   pride that he involves himself.  He's been on this team for a

13   number of years.  He's a very well-recognized ultramarathon

14   runner, and he wants to join his team representing his country.

15   He's done this in the past.  He is with others, he's not by

16   himself.  There is a team captain, and he is requesting

17   permission to do that, to represent his country.

18           THE COURT:  What exactly would there be preventing him

19   from, if he were allowed to do this, from not only running in

20   the ultramarathon, but running from this proceeding and not

21   coming back to the United States?

22           MR. BROUNSTEIN:  Judge, as I've stressed, that there

23   are -- the guidelines in this case are not the type of

24   guidelines where I think an individual would basically risk his

25   business.  He has 24 employees, he has a home in Yonkers.  I

H9FKARNP

just think it's highly, highly unlikely that an individual --

and certainly, Judge, there are extenuating circumstances to

this case.  The reason why he was arraigned earlier on and

presented is that I could present an extensive application to

the government to defer prosecution in this matter because I

think there really are extenuating circumstances, and I will

lay that out to the Court at the time of sentence, but this is

a unique situation.  So I don't believe he is going to run for

anything.  He voluntarily surrendered when he was arrested.  He

understands the nature and circumstances of his plea, he

understands what he is facing.  I just don't see him as an

individual who is not going to return to court.  He understands

what his obligations are.  He's been released on his own

recognizance.  There have been no situations where he's been

late or even missed appointments in my office.  He's been a

responsible individual.  And I think when the Court --

ultimately, when the Court understands the nature of the facts

and circumstances of this case, I think the Court will have a

very, if not sympathetic, understanding of what happened here

in this matter.

THE COURT:  Okay.  Again, it seems to me that from

what you've described, there's nothing particularly about his

business that would require him to be here.  In the modern age

of technology, he could certainly communicate with his staff

remotely if he were in another country.  The other thing is

H9FKARNP

1    there's nothing particularly -- while I'm sure he cares

2    tremendously about running an ultramarathon, there's nothing

3    particularly compelling about that for me to allow him to

4    travel outside of the country to do that when he has been, it

5    seems to me, sort of generously allowed to simply not really

6    have a lot of restrictive conditions in terms of his monitoring

7    at this point.  He has now -- to the extent that there are any

8    changed circumstances, he has now been convicted of this crime,

9    and has now pled guilty and has even more incentive to

10   potentially flee.

11           The nature of the offense -- and I am sure I will get

12   more about that as we get closer to sentencing -- but the

13   nature of the offense is one that doesn't particularly show a

14   whole lot of reverence for the judicial process, so I am very

15   concerned that he is a risk of flight.  I'm not so concerned

16   he's a risk of flight that I think he needs to be remanded, but

17   I'm inclined to deny this application.

18           But I'll hear from the government, if there's anything

19   they want to say.

20           MR. SWETT:  The government agrees -- or the

21   government's position would be that it's not appropriate to

22   allow him to travel internationally.  The Court has set forth

23   many of the arguments the government would make.

24           I would also just note a couple of things:  First of

25   all, the first we heard of this application was this morning,

H9FKARNP

1    to my knowledge.  The defendant has not yet even raised this

2    with pretrial, and, obviously, their view would be relevant

3    prior to granting such an application.

4         Secondly, given that we only learned about it, we have

5    no idea the status of our extradition treaties with Greece.

6    The two countries that Mr. Arnstein sought to travel to

7    previously were China and England.  One of those countries,

8    obviously, would pose very serious problems for extradition,

9    but the other one, the United Kingdom, is a country with which

10   we have strong legal relationships, and even then, on a

11   business-related trip, the Court found it was not compelling

12   enough to grant what is an extraordinary allowance for someone

13   who is on pretrial supervision, let alone someone who, as the

14   Court noted, has now pled guilty to the crimes.

15        So, for those reasons and the reasons that the Court

16   raised, we think that this application should not be granted.

17        MR. BROUNSTEIN:  Your Honor, I understand the Court's

18   position.  I just want to answer one query the Court made about

19   operating his business remotely.  Mr. Arnstein is the face of

20   that business.  Most transactions which are conducted,

21   important transactions, he does on a face-to-face basis, and

22   one of the things that really has hurt his business was his

23   inability to travel during this time period, particularly the

24   trip to England where he was going to meet individuals from

25   around the world who basically mine these stones that he buys.

H9FKARNP

1    So I say, Judge, if he were to flee, he wouldn't just be

2    risking the loss of his freedom, he would lose his entire

3    business.

4           These people -- this is really a third-generation

5    business.  He supports his family and his 24 employees, who he

6    is extremely dedicated to and they are dedicated to him if he

7    fled.  So I understand the Court's position, but this is

8    somewhat of a unique circumstance, and, as I said, he has met

9    all his obligations, and I have no doubt that he will return to

10   court at any time the Court requested him.

11          THE COURT:  Okay.  Again, as you've set forth, this is

12   not travel for business, this is not travel to see some sick

13   family, this is travel so he can run in a race.

14          MR. BROUNSTEIN:  It is, Judge.

15          THE COURT:  So that's denied.  The application is

16   denied.

17          MR. BROUNSTEIN:  I understand, your Honor.

18          THE COURT:  Anything else from the government?

19          MR. SWETT:  No.  Thank you, your Honor.

20          THE COURT:  Anything else from the defense?

21          MR. BROUNSTEIN:  No, sir.

22          THE COURT:  Okay.  We are adjourned.

23                              * * *

24

25